The Chancellor.
The complainant is the owner in fee of live eighths of a farm in the county of Middlesex. The defendant, Ezra Ayres, lias title to tho remaining three eighths. Tho farm was formerly owned by Alexander Campbell, who, by his will, devised it to his wife- and three children. The complainant, besides one fourth devised to him by bis father, derived title, through the will of his brother, to another fourth, and inherited one eighth more from his mother at her decease. The defendant, Ezra Ayres, holds under Samuel Ayres and his wife Mary. Mary, as one of the children of Alexander Campbell, was *270 entitled to one fourth, and one eighth she inherited from her mother. The three eighths now held by Ezra Ayres were conveyed to him by Samuel Ayres and his wife.
The bill, in the first place, asks that Ezra Ayres may be compelled specifically to perform an agreement which the complainant sets forth in his bill, as having been made between himself and Samuel Ayres and Mary his wife. The agreement is alleged to have been, that Samuel and Mary would convey to the complainant their interest in the farm for the consideration of one thousand dollars, of which eight hundred dollars have been paid.
There is not sufficient proof to establish the agreement. If the agreement were proved, it was a parol agreement, and there is no such part performance as will take the case out of the operation of the statute of frauds. The payment of part of the consideration will not of itself, under ordinary circumstances, avoid the statute. But even that is not proved. There was no part (execution) of the contract by possession. It is true the complainant is in possession, but that possession is not referable to the contract. The complainant obtained possession under his own title, and there is no act of Mary Ayres or her husband which can be construed to ascribe the complainant’s possession to any act of theirs under the alleged agreement. The act which is relied upon to establish part performance must be clear and definite, and referable exclusively to the contract. 2 Story’s Eq. Jur. 764.
But there is another aspect in which this bill is filed. It prays for partition. Neither party objects to the partition ; but the complainant insists that, in making the partition, he is entitled to certain equities, which he prays may be established and adjusted in making the partition. And one of the defendants, the administrator of Deborah Ayres, sets up certain equities, which he insists should be established and enforced as liens upon the land in his intestate’s favor, before any partition is made.
At the time of Alexander Campbell’s death, which was *271 in March, 1835, he left a large amount of debts, part of which were secured by mortgages upon the land of which partition is now sought. One mortgage was dated the first day of March, 1832, and was given, by Alexander Campbell to Gabriel Mundy, to secure a debt of sixteen hundred dollars. The other mortgage was a lien of eight hundred dollars on a part of the land in question, when Alexander Campbell purchased it, and was held by Sarah Versatile. He assumed its payment, as part of the consideration lie was to pay for the land. At his death, he left but little personal property, and the real estate described in the bill was all the real estate of which he died seized.
By Ms will, ho directed all his debts to be paid, as soon as convenient after his decease. He devised all his property, after payment of his debts, to his wife, Deborah, and his three children, Henry, the complainant, and Mary and Isaac, since deceased. Ho declared it to be his will that there should be no division of his property until the youngest child should be of age. Isaac, the youngest, was at the death of his father about ten years old.
The bill alleges that all the debts of the testator, including the two mortgage debts, were paid by the complainant, and ho insists that he should be remunerated out of the real estate before any partition is made, or that in making the partition, he should have the benefit of the debts paid by him as liens upon the property.
The administrator of Deborah Campbell, who was the executrix of her husband’s will, sets up that the debts were paid by the joint industry of Deborah and her children, while they were under age and living with her; and that, as she was entitled to the services of her children during their minority, whatever of the testator’s debts were paid by them during such minority were, in law and equity, payments made for her, and to the exclusive benefit of wbich she was entitled. Her administrator therefore insists that the debts of the testator were paid by Deborah Campbell, and to the amount of such payments he claims an equitable lien upon the land in question.
*272 Another defendant, Ezra Ayres, insists that the debts were paid off by Deborah, as is alleged by her administrator; but that they were paid off in a manner, and under circumstances, which reject any implication.,of a legal or equitable claim upon the land for reimbursement.
The following facts are very satisfactorily proved by the evidence: that all the debts of the testator, with the exception of the Vermule mortgage, were paid off prior to the fourth day of November, 1841, when the complainant arrived at the age of twenty-one; that the debts so liquidated were paid mostly by money derived from the industry of the complainant, with the exception of seven hundred dollars received from the estate of Jeremiah Clark-son, and which the testator, Alexander Campbell, bequeathed equally to his widow and three children. This seven hundred dollars was appropriated to pay off the debts of the testator, except, also, the sum of four hundred dollars, which was received from the railroad company for the right of way through the land, which was appropriated for the same purpose, and the sum of eight hundred dollars, which was paid by the complainant after he arrived at twenty-one years of age, and which went to discharge the Vermule mortgage.
These are the leading facts which must decide the issues made by the pleadings, as I have stated them.
In New Jersey, the mother, upon the death of the father, is entitled, as the natural guardian, to the earnings of her children during their minority. This is a general principle, hut may be rendered inapplicable from various circumstances. The mother may emancipate her child, and clothe him with express or implied authority to receive for himself the wages of his own skill and labor. If a mother permits her child to leave her roof, and provide for himself, or if she refuses to furnish him with the necessaries of life, so as to compel him to seek his own maintenance, he may contract for his own labor, and he entitled to receive the earnings of his industry. A pay *273 ment, under such circumstances, to the child would be a good defence against any claim made by the mother. If a mother permits her infant child to receive his own wages, and invest them, she cannot, after such appropriation with her consent, claim the benefit of such investment. She cannot, after such child has arrived of age, call upon him to account with her for his earnings during his minority; and if she cannot, most assuredly her administrator can have no such right, either in law or equity.
What were the circumstances under which the complainant while under age made the payments he did towards the liquidation of the debts of his father’s estate ? and had lie, or his mother’s personal representative, any equitable lien upon the real estate left by the father, at his decease, for such payments ? •
His father died largely in debt. The debts amounted, at his deatli, to §3272.34, including §2400 of mortgage debt on his real estate. lie left no property except some implements on the farm, of the value .of about §200, and the homestead farm on which he lived at his death. He devised this farm equally to his wife and his three infant children, with instructions that it should not be divided until the youngest child should arrive at age. The complainant was the eldest, and was then fifteen years old. His brother Isaac was the youngest, and then ten years old. By the very language of the will, the farm was devised subject to the payment of the testator’s debts. It is evident that it was the expectation of the testator that the farm should not be sold to pay his debts. His only hope could have been that, by his widow’s keeping the family together on the farm, they might, by their joint industry, pay the debts, and reserve the farm to accomplish the object of his will — a division — when the youngest of his children should arrive at the age of twenty-one years. The widow did keep the family together on the farm, and, by the united industry of herself and children, the debts were paid, except about eight hundred dollars, "within the *274 time contemplated. The mother, having the control of the earnings of her infant children, appropriated them to the payment of these debts. While a considerable portion of the money was the result of the complainant’s labor, the appropriation of it was made by the mother herself. This is very clear from the evidence. The receipts were taken in her name, or in the name of herself, as executrix, and J ohn II. Campbell, executor. Among the numerous receipts, there is not one taken in the name of the complainant. The direct evidence and all the circumstances go to show that the payments were all made for the general benefit of the testator’s estate. The family were all working together for the joint benefit. It would be impossible to say, from the evidence, what portion, of the money raised was derived from the exclusive industry of the complainant — all contributed their earnings to the common purpose. Neither the complainant or his mother kept any account, or made any charges against the testator’s estate.
The family continued together until separated by the death of some and the marriage of the daughter. Isaac died in 1848, and by his will gave to his sister Mary a legacy of one hundred dollars, and the rest of his property to his brother, the complainant. In 1843, Mary married, but still continued with the family for some time. Deborah Campbell, the mother, died intestate in January, 1852. Dp to the period of her death, Mrs. Campbell was considered in possession of the farm and the head of the family. The payment of the last interest on the Vermule mortgage, which was in 1848, and which was the last money paid on the debts of the testator, except the principal of that debt, was receipted on the obligation as having been received of Mrs. Campbell. As long as she lived, whatever money was paid for the family was receipted as received from her. There was nothing heard of any of these equitable liens until a partition of the farm was talked of. After most carefully examining all the facts, my *275 conclusion is, that the complainant has no equitable lien on this land for any contribution ho made, during 1ns minority, towards the payment of the debts of his father. Nor has the administrator of Deborah Campbell any equitable lien for any debts of the testator paid by her. She never set up any such claim during her lifetime, and it is very evident that she never contemplated preferring such claim against her husband’s estate. She proved the will of her husband, and received letters testamentary, but never rendered -any account of her administration. She kept no account against the estate, and it is apparent that her great object and hope was to free the land from embarrassment for the mutual benefit of her children, without any intention of making any charge against them or against the estate. The money received of the railroad company and of the Clarkson estate, and which was appropriated to the payment of the debts, amounted to §1120. This belonged equally to the widow and the children, and of course, the payment was for their mutual benefit.
There are other claims which the complainant sots up as equitable liens on the property, and which he insists he is entitled to the benefit of in the partition. He alleges that, after he came of age, he made valuable improvements on the property, and among other expenditures, made one of §490, in the year 1848, in erecting new outbuildings. He further alleges, that he paid to his sister Mary and her husband §612, as part consideration for his sister’s interest in the farm. He claims allowance, also, for interest, which he alleges he paid on the Vamule mortgage after he was of age, and for §800, the principal of that mortgage.
It docs appear that some valuable improvements were put upon the farm, in 1845, by the complainant, while Mrs. Campbell, the complainant, and his brother Isaac were occupying it. But the improvements put upon the farm after the complainant arrived of age, until Mrs. Campbell’s death, together with the interest money which *276 was paid on the Yermule mortgage, did not constitute more than a fair equivalent for the rents and profits. The timber for the improvements was all procured from the premises. Besides, I cannot say with certainty from the evidence, that the money advanced to pay for the improvements, or to pay the interest on the Yermule mortgage, was the money of the complainant. The receipts for interest on the Yermule mortgage are all given to Mrs. Campbell; and no explanation is offered to reconcile this fact with the allegation that the payments were made by the complainant.
As to the payment of $612 to Samuel Ayres and his wife, as part payment for their interest in the farm, I have already stated that I find no evidence to sustain the allegation. There is some evidence of advances made by the complainant to his sister Mary; and if the complainant can show that these advances were made, and received by her, or by herself and husband after their marriage, on account of her interest in the farm, I think the court may properly declare such payment a lien, and adjust it in decreeing the partition. One of the reasons why a court of equity does not consider payment of a portion of the purchase money such a part performance of a parol agreement as will take the case out of the statute, is that the party has his remedy at law to recover back the purchase money so paid. Whatever money, therefore, the complainant may have paid on account of Samuel and Mary Ayres’ interest in the land he may recover back at law. This court, having now jurisdiction over the parties and the land for the purpose of ascertaining and setting off to each their respective interest, may properly adjust all legal claims which one may have against the other respecting the land of which partition is to be made. Where one tenant in common has made a parol agreement with another tenant in common for his interest in the land, and paid a part of the purchase money, which agreement fails by reason of the purchasers refusing to comply on account *277 of the agreement not being in writing, a court of equity, in decreeing a partition, may properly decree the purchase money so paid to be a lien on the premises.
As to the principal of the Yermule mortgage; it clearly appears that the complainant, in the year 1848, paid it, and that he borrowed most of the money for the purpose, for which he gave his own obligations, and afterwards paid them. This payment seems to have been made under different circumstances from the payment of the other debts, and it seems but equitable that the complainant should have a lien on the property to reimburse himself.
Under all the circumstances, I think the complainant should be charged with the rents and profits from the death of his mother. Since then he has had the exclusive enjoyment of the property.
There is one position taken by Ezra Ayres, in his answer, -which I have not noticed. He insists that he is a bona fide purchaser without notice, and that the interest which he holds in the land, under Samuel Ayres and wife, is not therefore subject to any equities the complainant may have against it. The defendant, Ezra Ayres, is not entitled to the consideration of a bona, fide purchaser. To place himself in such position, he should have showed that he had paid the consideration money. The fact, that both he, and Samuel Ayres, his grantee, in their answers, carefully avoid stating that any part of the consideration money has been paid, or even secured, in connection witii the evidence of Mr. Shaffer, showing what object Mary Ayres had in view in divesting the title, satisfies me that Ezra Ayres will lose nothing, which ever- way this suit may be determined. If he is loser, it is his own fault. If he paid the purchase money, he should have stated so in his answer.
Before decreeing a partition, I shall order an account.
First. To ascertain what amount, if any, was paid by the complainant to his sister Mary, or to her and her hus *278 band, for the purchase of their interest in the land, and interest from the time of the payments.
Second. To state an account of the payment made by complainant to discharge the principal due on the Vez’~ mule mortgage, with the interest to the date of the master’s report.
Third. To take an account of the rents and profits of the premises since the death of Deborah Campbell, and after crediting the complainant with any permanent improvements since that time, to charge him with the balance.